UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17CR00347 ERW |
| DENZEL DEVON COLEMAN, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David Noce [56], pursuant to 28 U.S.C. § 636(b)(1), recommending the denial of Defendant Denzel Devon Coleman's Motions to Suppress [36]. Defendant filed timely objections to the Report and Recommendation [57]. The Court ordered Defendant to file more specific objections, which were filed by Defendant on April 27, 2018 [59].

The Court conducts a *de novo* review of those portions of a report or specified proposed findings to which timely objection is made. 28 U.S.C. § 636(b); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). General objections are not sufficient to challenge a magistrate judge's findings and are subject to clear error review. *See Ramirez v. U.S.*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012); *Greene v. Quest Diagnostics Clinical Lab., Inc.*, 455 F. Supp. 2d 483, 488 (D.S.C. 2006); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990). Although the Eight Circuit has indicated approval of such an exception, it has repeatedly emphasized the necessity of de novo review. *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).

The Court reviewed the motions, and the testimony, evidence, and arguments from the

evidentiary hearing. Based on this *de novo* review, the Court concludes the Magistrate Judge made proper findings and correctly analyzed the issues. The facts of this case, relevant to the motion to suppress, are as follows.

On December 15, 2016, JD[1] called 911 to report he had been robbed at the Knights Inn, 2790 Target Drive in St. Louis County. Around 3:00 a.m., St. Louis County Police Detective Michael Daugherty and Police Officer Trainee Benn arrived at the scene and spoke with JD. Officers Saul and Traum had already arrived at the scene and spoken with JD. The officers reported to Detective Daugherty what they learned and then went to Room 229 of the motel. Detective Daugherty and Officer Benn remained with JD, who told them he had gone to Room 229 to meet with a young female with reddish color hair in response to a Bankpage.com ad for a special massage. After he was admitted into the room, JD said the female admitted a large black male who told JD he could leave after he provided "his donation to the cause," which was $140.00. When the black male stated this, he reached toward his waistband. JD stated he paid the money.

When Officers Saul and Traum arrived on the floor with Room 229, they saw a female run from Room 229 towards Room 226. After Detective Daugherty and Officer Benn arrived on the floor, Officer Benn and another officer went to the front desk of the motel and asked who rented both rooms. They were orally told a woman named AR rented both rooms. They conveyed this information to Detective Daugherty.

Officers Traum and Saul noticed the door to Room 229 was ajar and they announced they were police looking into a report of a robbery. They entered the room to ensure there were no robbery victims or perpetrators in the room. The officers encountered TS, who said he went to

---

[1] Without objection, the Magistrate Judge sustained the government's request certain persons be referred to by their initials only.

the room in response to a Backpage ad. As the other officers joined the room, TS stated there had been a female present in the room. The officers went to Room 226 to speak with the occupants.

When Detective Daugherty and Officer Benn knocked on the door of Room 226, a male voice responded that he was not going to come to the door. After requesting to speak with the occupant several times, Officer Bent asked if AR was present. The male voice responded she was in the room, but was asleep and there were children in the room. Because of the reported robbery, possibly involving a weapon, the joint occupancy of Rooms 226 and 229, and the children present in Room 226, the officers believed an emergency situation existed in Room 226 and used the room key to enter the room. Five adults were found in the room and two children. The adults were removed from the room and detained; they were told to sit on the hallway floor. Defendant was handcuffed.

Detective Daugherty and Officer Benn asked JD if he would participate in a physical lineup of the available suspects from Room 226, to which JD agreed. Detective Daugherty and JD went outside and sat in the front two seats of a police vehicle. The vehicle faced the hotel with the lights shining brightly. Each detained adult was brought through the area, one at a time. JD identified Defendant, the only black male, as the robbery perpetrator and KL, one of the females, as the person he met in Room 229. The officers then called in the Special Investigative Unit since the case involved potential prostitution and they secured Rooms 226 and 229. All of the adults, including Defendant, were transported to the St. Louis County Police Station.

At the station, Detective Matthew Black of the Special Investigation Unit asked AZ for consent to search Room 229 of the motel. She did not appear to be under the influence of any alcohol or drugs, she appeared to understand what was being asked, and she was not coerced or threatened. AZ signed a preprinted Consent to Search form for Room 229, as did Detective

Black. Similarly, Detective Black asked AR to sign a Consent to Search form for Room 226. She also did not appear to be under the influence of alcohol or drugs, she appeared to understand the question, and was not coerced or threatened. She and Detective Black signed the form.

Defendant was interviewed at the police station by Detective Michael Slaughter of the Special Investigation Unit. The interview was audio and video recorded. Defendant was given a sheet of paper listing his constitutional rights to remain silent and to counsel. He read these aloud to Detective Slaughter and after each statement, Detective Slaughter asked him if he understood to which he replied he did and initialed indicating he understood the right. Defendant also signed a consent to search form for the contents of his ZTE cell phone. He did not consent to a search of two other cell phones. After Defendant made several statements to Detective Slaughter, the interview ended at 1:10 p.m.

In his objections to the Report and Recommendation, Defendant asserts the Magistrate Judge properly concludes Defendant was placed under arrest at the motel, but incorrectly concludes he was lawfully detained and the future police activities were lawful. Defendant argues all evidence and statements must be excluded, because the search of the motel room and subsequent events were unconstitutional.

Defendant's arrest was based on probable cause and was lawful. "The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony." *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists when police have "trustworthy information that would lead a prudent person to believe that the suspect had committed or was committing a crime." *United States v. Luke*, 686 F.3d 600, 605 (8th Cir. 2012). Officers may detain someone for further investigation when there is reasonable suspicion the defendant was involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1,

30 (1968).

Here, it was reasonable for police officers to detain Defendant for further investigation. Police officers were investigating a potential armed robbery in Room 229. In the course of this investigation, they observed a woman run from Room 229 to Room 226. The motel front desk attendant informed the police officers the same individual was renting both rooms. Defendant was found in Room 226. These facts, in conjunction with other information received from JD, give rise to reasonable suspicion Defendant was involved in criminal activity.

The continued police custody and transport to the police station were also lawful. During their investigation, officers conducted a line-up of people involved in the incident, including Defendant. The victim, JD, identified Defendant as the perpetrator of the robbery. This, along with the other circumstances known to the officers about the robbery, was sufficient to cause a reasonable person to believe Defendant committed the robbery. There was probable cause Defendant had committed a crime; thus, officers could lawfully arrest him without a warrant. *Watson*, 423 U.S. at 417.

The warrantless entry and searches of Rooms 226 and 229 were also lawful. Police officers may not enter a home without a warrant unless justified by exigent circumstances, for example, if lives are threatened, in the case of a suspect's potential immediate escape, or evidence is about to be destroyed. *United States v. Ball*, 90 F.2d 260, 263 (8th Cir. 1996). When officers decided to enter Room 226, they believed suspects to an armed robbery were in the room, because a person was seen running between Room 229 and Room 226, and both rooms were rented by the same person. Additionally, after knocking on the door, police officers were informed children were in the room. The presence of children, along with an armed robber, created exigent circumstances for the police officers to reasonably believe entry was required to

prevent harm to others. At the time of entry into Room 226, officers removed the occupants from the room and secured it, but did not conduct a search of the room.

The searches of Rooms 226 and 229 were done pursuant to voluntary consent. Police may search an area without a warrant or probable cause if the officers obtain voluntary consent from someone possessing authority over the area to be searched. *United States v. Armstrong*, 16 F.3d 289, 295 (8th Cir. 1994). "When the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). "Voluntariness depends on the totality of the circumstances." *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997). The Court should consider the age of the person, general intelligence and education, if they are intoxicated or under the influence of drugs and if they consented after being informed of their right to deny consent. *Armstrong*, 16 F.3d at 295. "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises." *Czeck*, 105 F.3d at 1239.

Here, the women who occupied Rooms 226 and 229 signed consent to search forms. The officers believed the women understood what was being asked and they did not appear to be under the influence of drugs or alcohol. The women had personal items in the rooms and appeared to have authority over the rooms. It was reasonable for the police to believe their consents were voluntary. For these reasons, the entry and searches of Rooms 226 and 229 were lawful.

Any evidence obtained from these searches or from Defendant's statements to police

after his lawful arrest need not be suppressed because the actions of the police officers were lawful and within the limits of the Constitution.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [56] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress [36] is **DENIED**.

So Ordered this 17th Day of May, 2018.

                                          E. RICHARD WEBBER
                                          SENIOR UNITED STATES DISTRICT JUDGE